IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| William D. Shugart,<br><br>            Plaintiff,<br><br>    vs.<br><br>Chester County,<br><br>            Defendant. | Civil Action No. 0:24-cv-826-CMC<br><br><br>**ORDER** |

Through this action, Plaintiff William D. Shugart ("Plaintiff") seeks recovery from his former employer, Defendant Chester County ("Defendant"), for alleged discrimination and retaliatory treatment due to his disability, pursuant to the Americans with Disabilities Act of 1990 ("ADA"); and interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B), DSC, this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report").

The matter is before the court on Defendant's motion for summary judgment. ECF No. 34. Plaintiff filed a response, and Defendant replied. ECF Nos. 37, 38. Plaintiff filed additional attachments to his response in opposition. ECF No. 39.

On August 15, 2025, the Magistrate Judge issued a Report recommending Defendant's motion be granted. ECF No. 41. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed timely objections, and Defendant replied. ECF Nos. 43, 44.

### 1. **Factual Background**

Plaintiff was employed by Chester County in its Emergency Medical Services ("EMS") department from May 2016 until January 2023. ECF No. 34-2 at 2. He was promoted to Senior

Paramedic on December 4, 2021. *Id.* at 17. An essential function of the Senior Paramedic was operation of an ambulance. ECF No. 34-3.

On September 8, 2021, Plaintiff was involved in a dispatched incident in which the responding paramedics and police officers heard a gunshot from the house and "agreed that someone had shot and we [paramedics] needed to leave." ECF No. 34-5 at 2.  Plaintiff alleges as a result of this incident he "began suffering from PTSD and depression and was struggling at work due to the traumatic experience he went through." ECF No. 14 ¶ 15. (Am. Compl.).

Plaintiff sought medical care from his primary care provider, Physician's Assistant Marlon Shelby at Lowrys Primary Care. He was seen on February 23, 2022, at which time Shelby noted "positive for decreased concentration and sleep disturbance." ECF No. 34-8 at 2. On August 10, 2022, Plaintiff was seen for "decreased concentration, depressed mood, excessive worry, insomnia and nervous/anxious behavior." *Id.* at 7. Shelby noted risk factors included "major life event (was shot at work)." *Id.* Plaintiff's past medical history was "significant for anxiety/panic attacks and depression." *Id.* He was prescribed medication. *Id.* A follow up on September 9, 2022, noted Plaintiff's depression was "much improved" and it was recommended he continue medication and follow up in four months. *Id.* at 6.

Plaintiff also "self-referred for assessment" with Carolina Center for Counseling and Behavior Interventions, LLC, counselor Ronald Reames, on August 4, 2022. *Id.* at 11. Plaintiff reported difficulty at work since a "gunshot happened behind him in close proximity" while on a call in September 2021. *Id.* He has had "difficulty being at work" and reported "poor sleep, appetite is intermittent, energy and focus good however his motivation is up and down." *Id.* In addition, he

2

reported occasional thoughts of the incident and hypervigilance at work. *Id.* Plaintiff was scheduled for an additional appointment with Mr. Reames on September 13, 2022, but failed to attend.

Britt Lineberger, Director of Chester County EMS, testified at deposition he was notified Plaintiff was struggling, and that Plaintiff would often have to leave his shift when it became dark. ECF No. 34-6 at 4 (Lineberger dep.). Lineberger and Plaintiff discussed moving him to a 12-hour day shift instead of the 24-hour shift to avoid having to work after dark. *Id.* at 5. Plaintiff worked 12-hour shifts from approximately July 24, 2022, until the end of his employment with Chester County. ECF No. 34-7 at 7-8 (Pl. dep.). However, Plaintiff testified this accommodation did not work for him because it "wasn't the time of day that made it harder for me to be on the ambulance. It was just being on the ambulance." *Id.* at 8.

Plaintiff also testified he requested an accommodation of transfer to a billing specialist position. *Id.* at 9. According to Mr. Lineberger, Plaintiff, in his role as a paramedic, did not perform any billing-type responsibilities and did not have experience in billing. ECF No. 34-6 at 3. Lineberger agreed to meet with the County Treasurer to inquire whether the pay rate for the Billing Specialist position could be increased, as it paid less than Plaintiff's position as a Senior Paramedic. EMS Operations Manager Tyanne Perry testified Plaintiff "understood that there would be an application process for [the billing position]" and expressed interest in applying for the position if it came open. ECF No. 34-4 at 4.

On September 12, 2022, Plaintiff left his shift early, texting Perry he was clocking out and would not be in tomorrow. ECF No. 34-10 at 3. He stated he "need[ed] off the units" and agreed

3

with Perry's suggestion to "take [him] off the schedule indefinitely for now." *Id.* at 3-4. He utilized annual and sick leave to cover the time for the pay period September 10-23. *Id.* at 7. He also inquired as to whether Perry had heard anything from Lineberger regarding the billing position. *Id.* at 3.[1]

Sylvia Young, HR Representative; HR Director Reggie Higgins; Lineberger; and Perry met on September 19, 2022, and Lineberger proposed moving Plaintiff to the billing specialist position because the current specialist was retiring. ECF No. 39-8 at 2. Lineberger reported that Plaintiff had been out on sick leave for a few weeks due to his PTSD-like symptoms, and proposed the billing position as an accommodation. Higgins wrote "none of this was known to HR prior to the meeting. No documented indication of disability or request for accommodation had been received by HR at this time." *Id.* Higgins explained to Lineberger and Perry that long-term sick leave (more than three days) and accommodations based on disability must go through a formal process including medical documentation for FMLA leave or ADA accommodation. Lineberger and Perry indicated they had been "trying to get in touch with [Plaintiff] about returning to work or requesting accommodations without success." *Id.*

Plaintiff emailed Higgins and Young on September 28, 2022, formally requesting FMLA benefits and including an application for FMLA leave from September 12, 2022 to October 10, 2022 "to care for psychiatric condition resulting from a critical traumatic incident on duty 9/8/21."

---

[1] Plaintiff acknowledged at deposition the billing position was still "technically occupied" by the original employee when Plaintiff stopped working. ECF No. 34-7 at 9.

ECF No. 34-12 at 2-3. HR informed Plaintiff he had 15 days to return the FMLA paperwork properly filled out from his medical provider, which would be due October 13. ECF No. 39-8 at 2. Plaintiff initially sought to return to work October 11, 2022, but informed Perry via text he would not work on an ambulance. ECF No. 34-7 at 3, 6. Lineberger asked Higgins about Plaintiff's return to work October 11 and the plan for him to apply to the billing position after he came back from FMLA leave, and asked what the current plan on posting the position was. ECF No. 34-12 at 6. Higgins replied "unless you've heard from William indicating otherwise, he's still on FMLA which he formally requested on 9/28/22." *Id.* at 5.

On October 17, 2022, Plaintiff's medical provider faxed Young a completed "Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act" form, which was dated October 15, 2022 and listed Plaintiff's expected incapacitated date range as September 12, 2022 to October 13, 2022. ECF No. 34-12 at 7-11. It did not, however, include a medical clearance or return-to-work clearance letter. Plaintiff did not return to work as of October 13, 2022.

On or about the week of October 24, Plaintiff appeared at HR and announced he was ready to return to work. Higgins notified him FMLA requires a return-to-work notice from his health care provider before he can be cleared to return. ECF No. 39-8 at 3. On October 31, Plaintiff brought a letter from his provider stating he could return to work November 1. ECF No. 34-12 at 13. However, Higgins notified Plaintiff the return-to-work dates on the original FMLA paperwork and the return-to-work letter were inconsistent, and FMLA required the paperwork to be accurate. *Id.* When Plaintiff was informed he needed additional paperwork from his medical provider, he

5

noted he had already provided such paperwork and "will not be doing it again." ECF No. 34-12 at 23.

"To help out," Lineberger volunteered to pick up Plaintiff's FMLA paperwork (sealed) and deliver it to his doctor's office." *Id.* at 34. He delivered a sealed and revised copy of the paperwork to Lowrys Primary Care, who faxed the paperwork back on November 21, listing Plaintiff's incapacity dates as September 12 to November 27, 2022. *Id.* at 43-46. A "Return to Work Certification for Family and Medical Leave" form was signed with a release date of November 28, 2022. *Id.* at 51. That form noted Plaintiff was able to do the essential functions of his job and had "no restrictions." *Id.* Plaintiff did not return to his position as a Senior Paramedic.

Plaintiff was placed on "administrative termination" status effective January 1, 2023, for failing to return to work and voluntarily abandoning his job. ECF No. 34-13 at 3. It was noted he "could re-apply" while in this status. *Id.*

After Defendant posted the billing position on January 5, 2023, Plaintiff submitted an application on January 23 and notified Perry and Higgins of his application via email. ECF No. 34-14 at 2. On January 26, 2023, Plaintiff was invited by Perry to interview for the position on January 30 at 1:00pm. *Id.* at 3. However, on Sunday, January 29 at 5:00pm, Plaintiff texted Perry he was unable to attend the following day and asked to reschedule for Friday or the following Monday. *Id.* at 4. He stated "if this does not work please let me know. I apologize for any inconvenience. This is out of my control." *Id.* In response, Perry informed Plaintiff she believed the only day for interviews was Monday, and asked if he would be available by Zoom. Plaintiff did not respond and did not attend the interview.

6

Perry and Lineberger both testified at deposition that Plaintiff would be a good candidate for the billing position. Perry testified she believed Plaintiff was capable of performing the billing position, but she would not have been the final decisionmaker to put him in the position. ECF No. 396- at 39. Lineberger noted "it had been discussed that he would be a really good candidate for the position." ECF No. 39-2 at 53 (Lineberger dep.). He explained the position had to be posted "even though I wanted to put somebody in there, they're going to make me go through the process, which I'm going to do anyway." *Id.* Lineberger was meeting with his supervisor, Dr. Frederick, about increasing the rate of pay for the billing position because there was a "significant pay difference between the billing clerk and senior paramedic." *Id.* at 51. He stated in his opinion, Plaintiff was qualified for the billing position and would have been good at it – but he ultimately was not chosen because he didn't attend the interview. *Id.* at 55.

Higgins noted the "manager or the director and one person from human resources" would have been in the interviews, but the function of the HR person "is to make sure that all managers and all directors who are interviewing don't make any mistakes, don't cross any lines in interviewing someone . . . we're just there silent. We don't really ask any questions." ECF No. 39-5 at 81-82. Higgins also testified the manager and director were responsible for deciding who would be hired for the billing position, naming "Tyanne Perry and Britt Lineberger. And if there was anything egregious . . . if there's something that came back in somebody's background check . . . we would let the manager know that there is an issue. But other than that, the director and manager are the ones that would make the decision." *Id.* at 87.

Defendant interviewed several candidates for the billing position on January 30, 2023, and hired Grace Wheeler, who had a background in finance and accounting and who was previously in charge of accounts payable for a different County Department. ECF No. 39-2 at 56; ECF No. 39-6 at 51. Plaintiff was not selected because he did not attend the interview. ECF No. 39-2 at 55.

## 2. **Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court is required to review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

8

In ruling on a motion for summary judgment, the court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020).

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does so, the burden shifts to the nonmoving party to "go beyond the pleadings" and come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To withstand summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

### 3. <u>Discussion</u>

The Magistrate Judge recommends granting summary judgment on all claims. ECF No. 41. Specifically, on Plaintiff's ADA claims, the Magistrate Judge found Plaintiff failed to prove the legitimate reason offered by Defendant for his termination, that he abandoned his employment, was pretext for discrimination. ECF No. 41 at 16-21. The Report also noted Plaintiff did not show his proposed accommodation was a reasonable one, as the billing position he sought was not vacant. For those reasons, the Magistrate Judge recommends summary judgment as to Plaintiff's ADA claims.

Regarding the FMLA claims, the Magistrate Judge recommends granting summary judgment because Plaintiff failed to refute Defendant's evidence he was provided FMLA leave

9

and his position was protected. Further, there is no evidence Plaintiff's use of FMLA leave was a factor in Defendant's decision to terminate him. *Id.* at 41.

Plaintiff objects to both conclusions. ECF No. 43. As more fully explained below, he requests the court reject the Report and allow the case to proceed to trial. *Id.* at 11. Defendant replied, asserting there are no genuine issues of material fact, and summary judgment should be granted on all claims. ECF No. 44.

### a.  *Pretext*

Plaintiff's first objection contends the Report erred in finding Plaintiff failed to prove Defendant's proffered reason for his termination – that he abandoned his job – was pretext for discrimination or retaliation. Plaintiff argues he has come forward with sufficient evidence to create a genuine issue of material fact that Defendant's reason was not the true reason for the adverse action, citing temporal proximity, shifting explanations, treatment of accommodations, and unusual handling of the FMLA paperwork.

Plaintiff argues the "timing of events alone supports" an inference that Defendant's proffered reason for termination was not the true reason, citing *Sempowich v. Tactile Sys. Tech. Inc.*, 19 F.4th 643, 654 (4th Cir. 2021). *Sempowich* confronted an employee's claim under the burden shifting framework of Title VII, also used by the Magistrate Judge in this case. To proceed under this framework, a plaintiff must establish a prima facie case of retaliation by showing he engaged in a protected activity, his employer took an adverse action against him, and that a causal relationship existed between the protected activity and the adverse employment action. *Id.* After the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate its

purported retaliatory action was in fact the result of a legitimate non-retaliatory reason. If it does so, the burden shifts back to the plaintiff to show the employer's purported nonretaliatory reasons were pretext for discrimination. *Id.*

Here, Plaintiff cites *Sempowich* for the proposition "[c]ourts have long recognized that such close temporal proximity between protected activity and an adverse employment action is sufficient *to support a finding of pretext*." ECF No. 43 at 4 (emphasis added). However, *Sempowich* held "temporal proximity suffices *to show a causal relationship*," which is part of the prima facie case of retaliation under the burden shifting framework – it does not relate to a finding of pretext, but is important to an earlier requirement in the burden shifting framework.[2]

Plaintiff next cites Defendant's "shifting explanations" for Plaintiff's termination as pretext. He contends Defendant, at different times, argued "Plaintiff had no disability because he was medically cleared, . . . that he had abandoned his position by failing to return after November 28, 2022, . . . and that he was not hired for the billing position because he missed an interview." ECF No. 43 at 4. Defendant argues it did not proffer shifting explanations, but instead provided "evidence based facts relating to different questions." ECF No. 44 at 3.

Again, Plaintiff's argument misses the mark: these are not different proffered reasons Defendant offered for Plaintiff's termination, but rather support for different parts of the test for

---

[2] The Magistrate Judge, though recognizing the parties dispute whether Plaintiff was disabled under the ADA and whether Defendant had notice of his disability, assumed Plaintiff was able to establish a prima facie case of discrimination and recommended summary judgment on the pretext issue. As such, causation, a part of the pretext inquiry, is not currently at issue here.

discrimination. See ECF No. 34 at 11 (discussing how "Plaintiff is not a qualified individual under the ADA because there is no evidence to support that he is disabled within the statutory framework."); ECF No. 38 at 5-6 (discussing reasonable accommodations). Further, the missed interview for the billing position occurred after Plaintiff's termination and thus could not be a pretextual reason for termination. While shifting explanations for an adverse employment action can show pretext, here there is no genuine issue of material fact regarding "shifting explanations" and the other reasons for termination as argued by Plaintiff.

Next, Plaintiff asserts he should have been accommodated by being hired for the billing position. He contends "reassignment to a vacant position is expressly recognized as a reasonable accommodation under the ADA. Defendant's refusal to consider this option – while simultaneously claiming job abandonment – casts serious doubt on the legitimacy of its stated reasons for termination…" ECF No. 43 at 4-5. Defendant notes Plaintiff was allowed to apply for the position, which did not become available until after he was placed in "administrative termination" status, but failed to attend the scheduled interview. ECF No. 44 at 4.

The record contradicts Plaintiff's argument that Defendant "refus[ed] to consider this option" of hiring Plaintiff for the billing position. Plaintiff admitted at deposition the billing position was still "technically occupied" by another employee when he stopped working as a paramedic. ECF No. 34-7 at 9. The evidence shows Defendant gave Plaintiff the opportunity to apply for the position in January. Plaintiff was notified on Tuesday, January 26, he was selected for an interview to take place the following Monday, January 30, 2023. ECF No. 34-14 at 3. However, on Sunday, January 29, at 5:00pm, Plaintiff texted Tyanne Perry with Chester County

12

notifying her he was "unable to attend tomorrow." ECF No. 34-14 at 4. Plaintiff stated "[i]f possible I would like to reschedule for Friday or next Monday. If this does not work please let me know. I apologize for the inconvenience. This is out of my control." *Id.* Perry texted back "[t]o my knowledge tomorrow is the only day for the interviews. Would you be available by zoom?" *Id.* Plaintiff did not respond to the return text. At deposition, Plaintiff testified he "needed more time – if I remember correctly, it was either on a Monday or right after and I wouldn't have been able to talk to an attorney, and I had already involved an attorney and I felt like I needed to speak to him since the situation had changed." ECF No. 38-1 at 5 (Pl. dep at 163).

It is clear from the evidence Plaintiff was given the opportunity to apply for the billing position and granted an interview, only to cancel a day before and fail to respond to further communication attempting to work out the particulars of the interview. Plaintiff had been previously notified there would be an application process for the billing position. ECF No. 34-4 at 36. He failed to complete that process, and the job was given to someone who did (and who had a finance/accounting background). ECF No. 39-2 at 56-57; *see Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1017 (4th Cir. 2020) (affirming summary judgment when individuals hired for alternate positions had more experience or surpassed the plaintiff in areas "central to [the open] position").

Plaintiff also cites testimony from Perry, who stated at deposition Plaintiff had not abandoned his job, and Lineberger, who testified he believed Plaintiff would never return to paramedic duty. ECF No. 43 at 8. Plaintiff asserts this testimony "creates a triable issue of pretext." *Id.* The court agrees Perry testified at deposition that *in her opinion*, Plaintiff did not abandon his

job. ECF No. 39-6 at 36 (emphasis added). When Lineberger was asked for his opinion on whether Plaintiff abandoned his job, Lineberger explained "I think Will was just scared to death to get back on an ambulance . . . And I think that was – at one point, I remember thinking he is never going to be a paramedic again, he's never going to get out of this. I know that did not answer your question." ECF No. 39-2 at 83.  Lineberger was then asked how Plaintiff's employment ended, and his understanding was "when FMLA ran out and they had, I guess, finally reached a point, that was just when they decided to separate. And that was HR." *Id.* at 84.

The Department of Employment and Workforce form Defendant completed in response to Plaintiff's request for unemployment benefits listed the reason for discharge as

> Failure to return to work, job abandonment. Mr. Shugart requested a medical leave, never returned the FMLA [illegible] or provided medical evidence to support the leave granted. Mr. Shugart was placed on administrative termination to which he could re-apply. Mr. Shugart applied for a position and failed to report to the scheduled interview. Mr. Shugart … did not respond to rescheduled Zoom interview and never contacted HR after that date.

ECF No. 34-13 at 3 (errors in original). The form then questioned if there was a policy covering this discharge, and Defendant listed "Policy 5-2 Employee Conduct and Discipline; K. Tardiness or Absenteeism" *Id.* This Policy section K, Absenteeism/Tardiness included the language "Any employee who fails to return to work as scheduled or to call in for three (3) consecutive days will be deemed to have voluntarily abandoned his job." ECF No. 34-9 at 114.

It appears undisputed Plaintiff failed to return to work as a paramedic after his FMLA leave expired and he was cleared to do so by his medical practitioner. He was placed on "administrative termination" but allowed to apply for the billing position when it was posted. It appears there was

14

a strong chance he would have been selected for the position, as Lineberger had determined Plaintiff would be good at it and was attempting to raise the pay rate so he would not have a significant drop in pay. Higgins acknowledged the manager and director, Lineberger and Perry, would have conducted the interview and been the ultimate decision makers on who to hire, absent a problem with background check or something similar. Given Lineberger had multiple conversations with Plaintiff about the position, believed he would be a good fit, and was advocating for a pay raise for the position, it is likely Plaintiff would have been selected had he attended the interview. However, Plaintiff failed to interview to complete the hiring process for the billing position, and another candidate who did attend the interview was hired.

Finally, Plaintiff contends "Defendant's handling of Plaintiff's FMLA paperwork was highly irregular." ECF No. 43 at 5. He asserts Defendant "rejected the October 15, 2022 submission, demanded multiple resubmissions, and even hand-delivered revised paperwork directly to Plaintiff's provider." *Id.* Plaintiff offers no argument as to how this shows pretext, merely asserting "each of these facts . . . raises a genuine dispute as to whether Defendant's stated reason was pretextual." ECF No. 45 at 5.

The court has considered Plaintiff's arguments for pretext individually and in combination, and agrees with the Magistrate Judge Plaintiff has not raised a genuine issue of material fact on any of his claims of pretext.

b. _Reasonable Accommodation_

Plaintiff next objects to the Report arguing it erred in holding the billing position was not a reasonable accommodation. ECF No. 43 at 5-6.[3] He contends the billing position was available prior to his termination, and Director Lineberger suggested placing Plaintiff in the billing position when it became apparent he could not return to ambulance duty. ECF No. 43 at 6. He asserts the position "was in transition and effectively vacant before January 2023," and whether it was vacant when Plaintiff requested reassignment is a factual question for the jury. Thus, he argues, Defendant was obligated to engage in the interactive process once Plaintiff disclosed he could not return to ambulance duty, but Defendant instead "prematurely declared" he abandoned his job. _Id._ at 7. Once he did apply, Plaintiff submits he was notified of the interview for the billing position January 27, "leaving him a single business day to make arrangements." _Id._ He contends he informed HR "he needed to reschedule to allow time to consult with his attorney," yet "Defendant refused to grant even a short continuance or provide a later interview date. Instead, the County offered only a last-minute Zoom option for the same time on January 30, and when Plaintiff could not attend, it proceeded with other candidates without rescheduling." _Id._ at 7-8.

---

[3] The court notes the Report did not separately hold the billing position was not a reasonable accommodation. See ECF No. 41. Instead, as discussed above, the Report found Plaintiff was unable to show the reason for his termination was pretext for discrimination or retaliation. _Id._ at 16. The Report then notes Plaintiff argued primarily "he should have been allowed to apply to the billing position as an accommodation for his disabilities." _Id._ at 17. In an abundance of caution, the court addresses Plaintiff's objection as presented.

Plaintiff's recitation of the timing and conduct surrounding the interview is belied by the record evidence. Plaintiff's email to Perry and Higgins, notifying them he had applied to the billing position, was sent Monday, January 23, 2023, at 6:41pm. ECF No. 34-14 at 2. The interview notification was sent by Perry at 2:00pm on Thursday, January 26, 2023, scheduling the interview for 1:00pm on Monday, January 30. *Id.* at 3. The email noted "if there is a reason you are unable to attend the interview, please let me know as soon as you can." *Id.* However, Plaintiff did not contact anyone about rescheduling until he texted Perry the day before the Monday interview, on Sunday evening at 5:00pm. *Id.* at 4. His text did not inform Perry why he needed to reschedule. Despite being contacted at 5pm on a Sunday, the day before the scheduled interview, Perry attempted to work around Plaintiff's inability to attend an in-person interview that Monday without knowing the reason for the request. When Perry asked if he would be available by Zoom, Plaintiff did not respond and did not pursue the opportunity any further. *Id.* Because Plaintiff never responded to her inquiry about a Zoom interview, the request to reschedule was unable to be completed.

Plaintiff was provided the opportunity to apply and interview for the billing specialist position when it was posted, but cancelled the interview the day before, and did not respond to inquiries about another option for the interview. The job was filled by a person with finance or accounting experience.

For the reasons above, the court finds summary judgment is appropriate for Defendant on Plaintiff's claims of ADA discrimination and retaliation.

17

c. *FMLA Claims*

Plaintiff also objects to the Report's recommendations to reject his FMLA interference and retaliation claims. ECF No. 43 at 8. He contends the Report "overlooks record evidence of interference and retaliation and improperly resolves factual disputes in Defendant's favor." *Id.* He asserts Defendant "significantly burdened his ability to exercise his FMLA rights" by requiring multiple resubmissions of the FMLA paperwork and hand-delivered revised forms to Plaintiff's medical provider in November 2022, calling this an "unusual level of intervention." *Id.* at 9. He argues his return-to-work date was delayed until November 28, 2022, because of these "repeated demands." *Id.* Plaintiff submits he has produced evidence showing the HR director, Higgins, handled his FMLA paperwork in an inconsistent and unreasonable manner, rejecting paperwork because the projected return dates did not "line up precisely." *Id.* He also contends this shows Defendant was "looking for reasons to delay or deny reinstatement rather than facilitating Plaintiff's return." *Id.*

Regarding retaliation, Plaintiff asserts he engaged in protected activity by taking FMLA leave from September – November 2022, then was terminated effective January 1, 2023, and "denied reemployment in the billing position." *Id.* at 10. He again points to the temporal proximity as supporting an inference of causation. He contends Defendant's explanations for termination are undermined by evidence of shifting rationales and irregular handling of Plaintiff's leave. *Id.* He argues summary judgment on his FMLA claims is improper.

The Magistrate Judge recommended granting summary judgment because Plaintiff was permitted his requested FMLA leave and his paperwork was completed by Defendant when

18

Plaintiff failed to correct problems with it. ECF No. 41 at 22. She noted Plaintiff was medically cleared to return to his position as a paramedic on November 29, 2022, with no restrictions or limitations, and he was not terminated until well after the expiration of the statutory 12-week period, when he failed to return to work. *Id.* at 23. She concluded "Plaintiff's FMLA claims fail where he has failed to refute Defendant's evidence that he was provided FMLA leave, his position was protected for the statutorily mandated twelve-week period, and where there is no evidence that his use of FMLA leave was a factor in Defendant's decision to terminate Plaintiff." *Id.*

Plaintiff emailed Defendant's HR department on September 28, 2022, formally requesting FMLA leave and including the FMLA application with his email. ECF No. 34-12 at 2-3. On October 17, 2022, Lowrys Primary Care faxed to Defendant a Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act, which stated Plaintiff had been incapacitated for more than three consecutive, full calendar days from 9/12/22 to 10/13/22. ECF No. 34-12 at 7-9. It noted he was to follow up in four months but had no information about whether Plaintiff would be able to perform his essential job functions or not. *Id.* at 10-11. This form did not include a medical clearance to return to work. On October 31, 2022, physician's assistant Marlon Shelby wrote a letter stating "it is my medical opinion that Mr. Shugart may return to work on 11/01/2022." *Id.* at 13. Because the letter did not have the same return to work date as the FMLA certification, Defendant requested a new set of FMLA documents with a consistent date on which Plaintiff could return to work. See *id.* at 23.

Plaintiff, however, refused to return to the doctor for another set of paperwork. *Id.* ("If you have any more. . .  plans that include me driving to your office, picking up a packet, delivering it

19

one mile away, paying for the privilege, and then getting an answer, please make sure you consider that I have already done that. I will not be doing it again."). "To help out," on November 16, 2022, Britt Lineberger offered "to pick up Will's FMLA paperwork and deliver it to his DR. Office (sealed of course)." *Id.* at 34. On November 21, 2022, Lowrys Primary Care faxed a revised Certification of Health Care provider form to Defendant. *Id.* The "best estimate of how long the condition will last" was listed as 11/27/22. *Id.* at 44. Also faxed was a Return to Work Certification, on which the provider checked "yes" to the question Plaintiff was "now able to perform those essential functions of his job that he could not previously perform because of the serious health condition for which the employee has been on leave." *Id.* at 51. Plaintiff was released to return to work effective 11/28/22 with no restrictions. *Id.* However, he never returned to his position as a senior paramedic.

To make out an FMLA interference claim, an employee must demonstrate he was entitled to an FMLA benefit, his employer interfered with the provision of that benefit, and the interference caused him harm. *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 796 (4th Cir. 2023). The court agrees with the Magistrate Judge Defendant has produced evidence Plaintiff was provided his twelve-week statutorily mandated FMLA leave, his position was protected during that time, and there is no evidence his use of FMLA leave was a factor in his termination. Plaintiff has failed to refute this evidence. In fact, the record shows Defendant went out of its way to assist Plaintiff in obtaining the appropriate paperwork when Plaintiff indicated he was ready to come back to work, even though he indicated he would not be going back on an ambulance. ECF No. 34-7 at 3 (Pl. dep at 45).

As far as the FMLA retaliation claim, Plaintiff must show he engaged in protected activity, Defendant took adverse action against him, and the adverse action was causally connected with the protected activity. *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016). Intent can be established by direct evidence of retaliation or through the burden shifting framework applicable to ADA claims. *Id.* As examined above, Plaintiff has not shown Defendant's proffered reason for his termination was pretext for retaliation. The court has examined Plaintiff's arguments of temporal proximity and purported shifting explanations for his termination, and found they do not rise to the level of pretext for an illegal termination. The court comes to the same conclusion regarding "irregular handling" of Plaintiff's leave or Defendant's "abrupt decision to proceed with other candidates rather than accommodate Plaintiff's modest interview rescheduling request." ECF No. 43 at 10, 11. The record shows Defendant assisted Plaintiff in obtaining corrected FMLA paperwork after he notified HR, in writing, he would not be pursuing additional paperwork from his physician's office. Similarly, Plaintiff failed to respond when Defendant attempted to offer an alternative interview possibility after Plaintiff informed HR on Sunday evening that he would not be able to attend the Monday interview.

Accordingly, the court finds summary judgment is appropriate for Defendant on Plaintiff's FMLA claims of interference and retaliation.

**4.  <u>Conclusion</u>**

For the reasons above, the court adopts the Report and incorporates it by reference into this Order. Defendant's motion for summary judgment (ECF No. 34) is granted on all grounds. This case is dismissed with prejudice.

**IT IS SO ORDERED**.

<u>s/Cameron McGowan Currie</u><br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina<br>
December 18, 2025

22